UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| **CARMEN CARTER,** | **CASE NO-1-00-977** |
| **PLAINTIFF** | **(WEBER, J.)** |
| | **(HOGAN, M.J.)** |
| VS. | |
| **THE E.W. SCRIPPS COMPANY,** | |
| **DEFENDANT** | |

## REPORT AND RECOMMENDATION

Before the Court are Defendant's Motion for Summary Judgment (Doc. 48) and Defendant's Motion to Dismiss (Doc. 52). Plaintiff, who is pro se, filed no Memorandum in Opposition to either Motion. These Motions were filed on May 30 and July 9, 2003, respectively. Defendant's Motion for Summary Judgment (Doc. 48) should be granted. Defendant's Motion to Dismiss (Doc. 52) should be dismissed as moot. The evidentiary base upon which Defendant relies is the affidavits of Albert Salvato and Mike Phillips.

## BACKGROUND INFORMATION

Plaintiff, Carmen Carter, is a former employee of the Defendant, The E.W. Scripps Company, which owns and operates newspapers, including but not limited to The Cincinnati Post and The Kentucky Post. Plaintiff was a reporter during the twelve-year period that she was employed by Defendant until her termination in October, 1999. Following her termination, Plaintiff filed charges with the EEOC alleging race, sex and disability discrimination. Following receipt of the right to sue letter, Plaintiff filed this lawsuit, alleging race and sex discrimination under Title VII and Ohio Revised Code Chapter 4112 and disability discrimination under the Americans with Disabilities Act (ADA). Plaintiff suffers from depression and considers herself disabled because of it.

Defendant asserts that it terminated Plaintiff for reasons unrelated to her gender, race or alleged disability. Defendant asserts that Plaintiff was terminated for persistent tardiness, insubordination and unprofessional conduct and that her termination was the last result after progressive disciplinary steps failed to alter her workplace behavior.

## THE UNCONTESTED FACTS

Al Salvato was the Assistant City Editor of The Post from January, 1996 to and beyond Plaintiff's termination in October, 1999. The Assistant City Editor is the direct supervisor of the reporters who write for the Metro Section of the newspaper and in this capacity was Plaintiff's immediate superior. Plaintiff was report to work at 6:00 a.m. In September, 1996, Plaintiff was counseled because of repeated tardiness. Her response was to call her supervisor a "fucking flake" and to accuse him of being "anal retentive." Salvato reported that on June 28, 1997, Plaintiff was 30 minutes late for work, that she was late for work 3 times during the week of March 11, 1999, and several times in September, 1999 and that there were numerous other occasions as described in Defendant's Exhibits 7 and 20. Salvato reported that after he issued a memorandum to his supervisor, Mike Phillips, regarding Plaintiff's absences in September, 1999, she was late for work on two occasions that month. (See Affidavit of Albert Salvato, Pgs. 1-6).

Salvato also reports numerous incidents of insubordination or refusing to follow a supervisor's orders. The first such incident occurred in October, 1996 when Plaintiff was ordered and refused to complete a story on Jim Tarbell and Broadway Commons. The second such incident occurred in November, 1996, when Plaintiff refused to complete an assignment relative to a story on Cardinal Bernardin. The third incident occurred when Plaintiff was instructed and refused to turn over notes in connection with a story on a Chamber of Commerce employee who was strip searched after a traffic arrest. The fourth incident occurred when Plaintiff was instructed and refused to cover a story about a severe winter storm. The fifth incident involved Plaintiff's failure to maintain contact with the Post on a story involving a Martin Luther King holiday rally and march, and her failure to submit the story prior to the Post's deadline. The sixth incident was Plaintiff's failure to properly perform an assignment on a story about philanthropist Lynn Stern. The seventh was Plaintiff's refusal to disclose to her

superior documents that she was seen to be retrieving from an internet printer. The eighth was Plaintiff's refusal to obey an order to "make calls to area police departments to see if anything newsworthy occurred overnight." (See Affidavit of Albert Salvato, Pgs. 1-6).

In addition, there were several incidents of what this Court would refer to as unprofessional conduct in the workplace. Other than Plaintiff's description of her boss as a "fucking flake," to which we previously alluded, there was an incident in January, 1999 where e-mails were sent to Mr. Salvato telling him to "knock it off" and asserting that her boss "had a problem." Another e-mail communication to her boss in March, 1999 called him a liar and told him to "get a life." The culmination of this type of unstable behavior occurred in March, 1999 when Plaintiff told her boss to get out of her face, grabbed his finger and bent it backwards. (See Affidavit of Albert Salvato, Pgs. 1-6).

The Affidavit of Mike Phillips, who at the time was Assistant Managing Editor of the Post and Mr. Salvato's immediate supervisor, generally corroborates the testimony of Mr. Salvato, but adds several points of concern. First, Mike Phillips makes clear that the reprimand-counseling approach was the first disciplinary effort, which was followed by a 3-day suspension in November, 1998. A 5-day suspension was ordered in March, 1999. The straw that broke the camel's back occurred in September, 1999, when Salvato informed Phillips of Plaintiff's continued tardiness and failure to perform several assignments. Phillips consulted with the Post's Human Resources Representative and his superior, Paul Knue, the Editor, and terminated Plaintiff's employment in October, 1999. Mr. Phillips first learned of Plaintiff's depression in late March or early April, 1999 and concluded that Plaintiff should not be supervised by another and no other openings were available for which Plaintiff was qualified. Mr. Phillips denied that race, sex or disability had any bearing on her termination, which he said was motivated by: "(1) tardiness and unproductive use of company time, (2) insubordinate conduct toward her superiors, (3) failure to adequately perform assignments, and (4) failure to keep her supervisors informed of stories she was working on." (See Affidavit of Mike Phillips, Pgs. 1-7).

**OPINION**

Ordinarily, we would start with a discussion of the elements of the prima facie case as it relates to the three claims that are presently before the Court. However, since Defendant's

Motion for Summary Judgment is unopposed, the most efficient manner of dealing with this Motion is to assume, for purposes of argument, the existence of a prima facie case for each claim and decide this case on the pretext issue. We know from *McConnell Douglas Corp. v. Green*, 441 U.S. 792 (1973) that once Plaintiff establishes a prima facie case, the burden of production shifts to the employer to articulate a legitimate non-discriminatory reason for the adverse employment action. The Defendant has done so as Mike Phillips has so stated. Once the employer states a legitimate non-discriminatory reason and backs up its reasons with supporting facts, both of which Defendant has done, the burden shifts to the Plaintiff to demonstrate by a preponderance of the evidence that the employer's reasons were pretextual. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502 (1993). In order to prove pretext, Plaintiff must demonstrate that the Defendant's legitimate non-discriminatory reason had no basis in fact, did not actually motivate the adverse job action or was insufficient to motivate the adverse job action. *Manzur v. Diamond Shamrock Chemical Co.*, 29 F.3d 1078 (6th Cir. 1994).

Defendant cites eight unreported cases to us in support of its Motion for Summary Judgment. The first, *Woodward v. Warrensville Development Center*, 1994 U.S. LEXIS 23960 (6th Cir. 1994), stands for the proposition that federal employment discrimination claims are limited to the allegations listed in Plaintiff's EEOC charge. It is argued that since Plaintiff's EEOC filing contained only claims related to her termination, her claims, described in Plaintiff's deposition as occurring prior to her termination, must be dismissed. We find it unnecessary to elaborate on this issue for the reason stated above.

The second case cited is *Hopkins v. United Parcel Service*, 2000 Ohio App. LEXIS, 443 (First District Court of Appeals, 2000), a decision which held that remedies available in the event of unlawful discharge under Ohio Revised Code Section 4112.14 are not available where the discharge was arbitrated and found to be based on just cause. While Plaintiff did unsuccessfully arbitrate her claims, we have chosen to resolve this case on other grounds.

The third case cited is *McDermott v. Provident life Insurance Co.*, 1991 U.S. Dist. LEXIS, 4158. (March 20, 1991) Although cited for the proposition that being qualified for the position is one element of Plaintiff's prima facie case, we find the *McDermott* case to be useful to our resolution of the case because of its additional holding that in cases where motive is an issue, summary judgment may be granted if Plaintiff's evidence is "merely colorable or is not significantly probative." McDermott emphasizes the point that "there is no issue for trial unless

there is sufficient evidence favoring the non-moving party." The evidence here is that Plaintiff's behavior in the workplace was so egregious that no reasonable juror would believe that race, gender or disability status was a motivating factor in her discharge.

The fourth case cited is *Villarruel v. Gary Community School Corp.*, 2002 U.S. LEXIS 2514 ( February 14, 2002), a case which held that yelling by a supervisor and the occasional use of abusive language by a does not constitute harassment in violation of Title VII because this conduct does not reach the level of severe and pervasive conduct. Again, we choose for the sake of efficiency to bypass all arguments, directed to the sufficiency of Plaintiff's prima facie case, and resolve the case on the basis of Plaintiff's failure to rebut Defendant's legitimate non-discriminatory reason for the adverse job action.

*Lusk v. Christ Hospital*, 2000 U.S. LEXIS 2691 (February 29, 2000) is the fifth unreported case cited by Defendant. The case held that depression which is controlled by medication does not constitute a disability under the ADA. Defendant then cites to Plaintiff's deposition testimony that her depression is treated with medication. We will assume the contrary, for purposes of argument. and directly address whether or not Defendant's motivation in either disciplining of terminating Plaintiff can reasonably be motivated by her disability in light of the un-rebutted affidavits of Messrs. Salvato and Phillips.

*Blue v. Federal Express Corporation*, 2003 U.S. LEXIS 8622 (May 5, 2003), is another ADA case which held that a person is not disabled when the person is precluded from working a specific job; rather a person is disabled when unable to perform a "broad range of jobs." Defendant cites us to *Blue* (as well as *Huge v. General Motors Corp.*, 2003 U.S. LEXIS 6263 (March 26, 2003) and *Cartwright v. Lockheed Martin Utility Services, Inc.*, 2002 U.S. LEXIS 13688 (July 3, 2002) because Plaintiff was able to find work and did work in other jobs since being terminated at the Post. Since resolving this case at the pretext stage permits a resolution on the basis of Defendant's motivation, we will assume, for purposes of argument, that Plaintiff is and was disabled under the ADA.

The most significant case cited by Defendant is *Black v. Runyon*, 2000 U.S. LEXIS 2381 (January 4, 2000), a case which has many similarities to the instant case. The Plaintiff in *Black* was both proceeding pro se and was a person who claimed to be disabled because of depression and to have been terminated because of his race and disability. As in the instant case, Mr. Black had an attendance problem. The Court concluded in *Black,* as we conclude here, that the

employer's non-discriminatory reason for Plaintiff's termination, as well as the progressive disciplinary steps which led up to that termination, has not been demonstrated to be pretextual.

**IT IS THEREFORE RECOMMENDED THAT**:

Defendant's Motion for Summary Judgment (Doc. 48) be granted and that this case be dismissed from the docket of the Court.  Defendant's Motion to Dismiss (Doc. 52) is hereby rendered moot.

November 12, 2003             s/Timothy S. Hogan
                                             Timothy S. Hogan
                                             United States Magistrate Judge

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| **CARMEN CARTER,** | **CASE NO-1-00-977** |
| PLAINTIFF | (WEBER, J.) |
| | (HOGAN, M.J.) |
| VS. | |
| **THE E.W. SCRIPPS COMPANY,** | |
| DEFENDANT | |

# NOTICE

Attached hereto is the Report and Recommended decision of the Honorable Timothy S. Hogan, United States Magistrate Judge, which was filed on 11/12/2003. Any party may object to the Magistrate's findings, recommendations, and report within (10) days after being served with a copy thereof or further appeal is waived. *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Such parties shall file with the Clerk of Court, and serve on all Parties, the Judge, and the Magistrate, a written Motion to Review which shall specifically identify the portions of the proposed findings, recommendations, or report to which objection is made along with a memorandum of law setting forth the basis for such objection, (such parties shall file with the Clerk a transcript of the specific portions of any evidentiary proceedings to which an objection is made).

In the event a party files a Motion to Review the Magistrate's Findings, Recommendations and Report, all other parties shall respond to said Motion to Review within ten (10) days after being served a copy thereof.