125 EAST COURT STREET
CINCINNATI, OHIO 45202
(513) 352-2000

# The Cincinnati Post

November 13, 1998

Ms. Carmen Carter
The Cincinnati Post
125 E. Court Street
Cincinnati, OH 45202

Dear Carmen

Your performance and your conduct on the job Thursday, 12 November, 1998, were not acceptable for an employee of The Cincinnati Post.

During the preceding week, you did not notify your supervisor that you were checking out a possible story. On Wednesday another reporter heard about that story from a City Hall source. On Thursday, on at least two occasions you were insubordinate, refusing directions from both your supervisor and your department head to prepare interview notes and you were unprofessional and discourteous to your supervisor. Only after a 20 minute meeting that included your department head, the managing editor and a representative of the Cincinnati Newspaper Guild, did you comply with the directions issued by your supervisor and by your department head.

We will not continue to tolerate this conduct.

Effective immediately, you are suspended without pay for three days. You are not to return to the newsroom while under suspension. We will expect you to return to work at 6 a.m., Thursday, November 19th.

Upon your return we expect you to accept the direction of your supervisor, to keep your supervisor informed about your work activities, and to maintain a professional demeanor at all times. We expect you to meet the standards for a journeyman reporter.

Although we have spoken to you many times, both in person and in writing, about your performance and about your conduct, there has been little improvement on your part. This is a final warning that if such behavior continues you will be subject to further disciplinary action up to and including termination of your employment.

If you have any questions about what is expected of you, contact me or your supervisor, Al Salvato.

Sincerely,

Mike Philipps
Assistant Managing Editor/Cincinnati

CC: Personnel files



# The Cincinnati Post

March 24, 1999

Ms. Carmen Carter
The Cincinnati Post
125 East Court Street
Cincinnati, OH  45202

Dear Carmen:

We have spoken and written to you many times about your conduct in the newsroom, but your conduct has shown no improvement.

You were told in a letter dated November 13, 1998, that you must keep your supervisor informed about your work activities and accept the direction of your supervisor.  You fail to meet that obligation on an almost daily basis.  Your responses to Al when he messages you with questions are rude, disrespectful and unprofessional for a journeyman reporter.

On March 16, 1999, your supervisor questioned you about your progress on several assignments he had given you.  You did not respond.  At that time you were picking up numerous pages of printed material from the Internet printer.  Your supervisor then asked if the printed material was related to your story and you responded that "They're probably for a story I'm working on".  You refused to tell him what the printouts were for or to update him on the progress of your stories

Today you told your supervisor "Get out of my face" and grabbed two of his fingers and bent them back in such a way as to cause pain

We've made every attempt to help you understand what is expected of an employee of The Post.  We are not going to tolerate your insubordinate behavior.

Effective immediately, you are suspended without pay.  You are not to return to the newsroom while under suspension.  We will expect you to return to work promptly at 6:00 a.m., April 1st.

Upon your return we expect you to accept the direction of your supervisor, to keep your supervisor informed about your work activities,  maintain a professional demeanor at all times, and report to work promptly at 6:00 a.m.

This is a final warning.  If you fail to report to work on time or you are insubordinate with your supervisor or management, your employment will be terminated.

Sincerely,

Mike Philipps
Assistant Managing Editor/Cincinnati

A SCRIPPS HOWARD NEWSPAPER

125 EAST COURT STREET
CINCINNATI, OHIO 45202
513 352-2980

EDITOR

# The Cincinnati Post

September 21, 1999

Ms. Carmen Carter
The Cincinnati Post
125 East Court Street
Cincinnati, Ohio 45202

Dear Carmen:

In a letter dated November 13, 1998, you were told that you must keep your supervisor informed about your work activities and accept the direction of your supervisor. You were reminded that you had been spoken to many times about your performance and conduct and cautioned that there had been little improvement on your part. In addition to being suspended, you were issued a final warning that the continuance of such behavior would result in further discipline, up to and including termination.

Unfortunately, your unacceptable behavior continued and the Company was required to issue further discipline to you in a letter dated March 24, 1999. Therein, the company notified you that your performance and conduct in the newsroom continued to be unprofessional and discourteous and would not be tolerated. The letter informed you of your second suspension and further included a very specific final warning that if you failed to report to work on time or if you were insubordinate with your supervisor or management, your employment would be terminated. You were specifically told that upon return from your suspension you were "to accept the direction of your supervisor, to keep your supervisor informed about your work activities, maintain a professional demeanor at all times, and to report to work promptly at 6:00 a.m."

You have recently violated the final warnings you have been given.

You reported late to work on September 10 and 13, and despite oral and written reminders to you from Mr. Salvato (including a memo dated September 13, 1999), you were again late on the next two days thereafter, September 16 and 17.

Further, on September 17 your direct supervisor, Al Salvato, made two assignments – a robbery/abduction story in Colerain Township and a story about a police crackdown on speeders and tailgaters on Interstate 275. When he assigned the robbery/abduction story he asked you to advise him of your progress as soon as possible.

A SCRIPPS HOWARD NEWSPAPER

Since he heard nothing from you for over an hour, he went to your desk to find you lounging, eating breakfast and reading Associated Press wire. When Al asked about your progress on the crackdown story, you said you were making little progress and had nothing on the robber/abduction story. You then said "You can leave now. Is there something else you want?" When Al continued to question you about your progress on the two story assignments your responses were rude and inconsistent.

Earlier the same week you were asked by your direct supervisor to contact at least a half dozen police agencies along I-275 in Ohio, Kentucky and Indiana, and ask how they are handling the crackdown. A day later, when asked about your progress, you had contacted one officer who assists the coordinator. You had not called the local police agencies.

As a general assignment reporter working the early morning shift, you are responsible for two deadlines a day, however you take neither the time nor the effort to live up to your responsibilities as a deadline reporter. You do very little to communicate with your direct supervisor and try to dismiss him by being rude.

Carmen, we have spoken to you many times, both in person and writing, about your performance, your conduct and your tardiness. There has been no improvement on your part. Effective immediately you are suspended for two weeks with the intention of terminating your employment at the end of the suspension period. This suspension is in accordance with Article XIX of the Collective Bargaining Agreement.

Sincerely,

Paul F. Knue
Editor

cc:  Guild

# CENTRAL COMMUNITY HEALTH BOARD OF HAMILTON COUNTY, INC.

*supported by*
*Hamilton County Community Mental Health Board*
*and Hamilton County Alcohol & Drug Addiction Services Board*
**520-532 Maxwell Avenue**
**Cincinnati, Ohio 45219**

### Bennett J. Cooper, Jr.
### Executive Director

Carmen Carter
DOB:  08/23/53

October 28, 2003

## TREATMENT EPISODE OVERVIEW

Ms. Carter was admitted to this agency on March 13, 2003 with a provisional admitting diagnosis of Depressive Disorder – NOS – DSM IV 311.  She presented with sleep disturbances, high levels of anxiety, feeling hopeless and helpless and overwhelmed by environmental stressors.

Ms. Carter was evaluated and assessed by Al Rivera, MD on March 18, 2003 and at that time was given trial medications, as follows:   Effexor XR 150 mg  twice daily; and Serzone 50 mg PO qd   At follow up, medications were changed to the following: Effexor XR, 150 mg, one twice daily; Neurotin, 300 mg – one three times daily and Serzone, 150 mg  one time daily.  Patient has experienced several failed trials of various medications and adjustments were expected.  Having shown minimal positive response to the above, on 09/16/03, Serzone was discontinued and  Zyprexa, 5 mg  PO one HS was prescribed.  However, due to concerns that one possible side effect of taking Zyprexa is diabetes, Ms. Carter declined Zyprexa and opted to continue with Serzone. In the interim, patient had blood glucose levels done and those results are not yet available.  Ms. Carter reports high blood pressure regulated by Norvasc, high cholesterol levels and she is somewhat overweight, all conditions making her a candidate for diabetes, posing a much higher risk for Zyprexa therapy.

Individual therapy sessions began on March 27, 2003 with Barbara Duhart, LISW. Focus of initial therapy was to stabilize on medications, identify triggers//sources of increased anxiety and feeling overwhelmed and work on skills/coping mechanisms in order to regain and maintain former levels of functioning.  Some progress has been made but many obstacles to recovery remain firmly in place.

| | | | |
|---|---|---|---|
| A.D.A.P.T. | 872-8870 | HIV Early Prevention & Intervention Project | 961-9930 |
| Central Intake | 559-2097 | Medical Records | 559-2024 |
| Client Account Inquiries | 559-2090 | Outpatient Department | 559-2097 |
| Community Services | 559-2075 | Personnel & Training | 559-2911 |
| Crisis Stabilization Program | 559-2922 | Research & Evaluation | 559-2029 |
| Day Treatment Center | 559-2063 | Residential Services | 531-0800 |
| Drug Services | 559-2056 | Children's Services Referrals | 559-2078 |
| Drug Services Intake | 559-2048 | All Other Departments | 559-2000 |

Fax Number 559-2020
An Equal Opportunity Employer and Equal Service Provider

Another focus of sessions was to build self confidence so that Ms. Carter could return to work. She also needed to move and at first was unable to accomplish this. She did eventually move to a new place but the stress and struggle in accomplishing the move induced exacerbation of the original symptoms and negated any progress to date. Ms. Carter also took a job and was attempting full time work when her father passed away in Chicago. She faced a different type of therapy need after returning home as she had obtained family information hidden for some time. Unresolved early childhood issues were explored. Ms. Carter continued to take medications but reported little, if any relief from depressive symptoms. Her fatigue was just as enduring and intense, there were episodes of binge eating, uncontrollable crying spells, poor memory and inability to concentrate and focus on any given task to completion. Grief, loss and acceptance of the inevitable were incorporated into sessions. Ms. Carter remains depressed and she is beginning to hold little hope of any relief in the near future. Explored options including voc/ed for career changes; part time employment; part time entitlements; there are several avenues open to Ms. Carter should she desire to begin accessing these and other resources. Ms. Carter indicated that she has filed for SSI and disability benefits.

Prognosis for Ms. Carter is guarded, mostly due to lack of positive response to several medications in various combinations. Physical indicators and attributes have been considered and Ms. Carter has been advised to get the regular maintenance physical with blood levels and thyroid check completed. She is still displaying the same set of symptoms as when she was first admitted and the far reaching effects of continuing symptomlogy add heavily to already prominent features of clinical depression.

ADMREC



# UNIVERSITY OF CINCINNATI HOSPITAL
## ADMISSION RECORD

MEDICAL RE

| ACCOUNT NUMBER | ADM. CAT. | SOURCE | ADMIT DATE | ADMIT TIME | SERVICE | TEAM | UNIT | ROOM/BED | |
|---|---|---|---|---|---|---|---|---|---|
| | EM | 1 | 080596 | | NURO | | PRE | 0000-00 | 0000012 |

| PATIENT NAME | LAST | FIRST | MIDDLE | MAIDEN | | SEX | RACE | MAR. ST. | AGE | BIRTHDATE |
|---|---|---|---|---|---|---|---|---|---|---|
| CARTER, CARMEN | | | | | | F | UN | U | 042 | 08-23 |

| ADDRESS | STREET | APT. | CITY | STATE | ZIP CODE |
|---|---|---|---|---|---|
| 2450 GRANDVIEW AVENUE | | | CINCINNATI | OH | 4520 |

| COUNTY | ADM. THROUGH | RELIGION | SOCIAL SECURITY NO. | TELEPHONE - HOME |
|---|---|---|---|---|
| HAMILTON | OTHR | | | 513/7515076 |

| NEXT OF KIN NAME | RELATIONSHIP | TELEPHONE - HOME | TELEPHONE - WORK |
|---|---|---|---|
| CARTER, MAE | MOTHER | 312/2686648 | |

| LOCAL CONTACT NAME | RELATIONSHIP | TELEPHONE - HOME | TELEPHONE - WORK |
|---|---|---|---|
| CARTER, MAE | MOTHER | 312/2686648 | |

**SYMPTOMS/DIAGNOSIS**
INTRACTABLE COMPLEX PARTIAL SEIZURES

| ATTENDING M.D. | RESIDENT M.D. |
|---|---|
| PRIVITERA, MICHAEL D | NOT, APPLICABLE |

**REFERRING PHYSICIAN/ADDRESS**

| FAMILY DOCTOR (PRIMARY CARE PHYSICIAN)/PRACTICE SITE | | CINCINNATI | OH |
|---|---|---|---|
| VICKERS, LEROY    2600 STRATFORD | | | |

| U.H. ADMITS PAST TWELVE MONTHS | FROM | TO | FROM | TO | LAST OUTPT. VISIT | LAST |
|---|---|---|---|---|---|---|
| ACCIDENT DATE | TIME | TYPE | PLACE | | | |

| PATIENT EMPLOYER NAME | TELEPHONE | STREET | CITY | STAT |
|---|---|---|---|---|
| THE CINCINNATI POST | 5133522741 | 125 E COURT ST | CINCINNATI | |

| GUARANTOR NAME/HOME TELEPHONE | SOCIAL SECURITY NO. | GUARANTOR EMPLOYER/TELEPHONE |
|---|---|---|
| CARTER, CARMEN    5137515076 | | THE CINCINNATI POST |

| CO. NO. | PLAN NO. | THIRD PARTY NAME/TELEPHONE | | PLAN NAME | |
|---|---|---|---|---|---|
| 31 | 099 | AETNA | 800/8434112 | I/P AETNA MISC | |
| SUBSCRIBER/CASE NAME | | | POLICY/CASE NUMBER | | EFFECTIVE DATE |
| CARTER, CARMEN | | | | | 10018 |
| PLAN NOTES | | | | | |

| CO. NO. | PLAN NO. | THIRD PARTY NAME/TELEPHONE | | PLAN NAME | |
|---|---|---|---|---|---|
| 01 | 001 | SELF PAY | 000/0000000 | I/P O/P SELF P | |
| SUBSCRIBER/CASE NAME | | | POLICY/CASE NUMBER | | EFFECTIVE DAT |
| CARTER, CARMEN | | | | | |
| PLAN NOTES | | | | | |

| CO. NO. | PLAN NO. | THIRD PARTY NAME/TELEPHONE | | PLAN NAME | |
|---|---|---|---|---|---|
| | | | / | | |
| SUBSCRIBER/CASE NAME | | | POLICY/CASE NUMBER | | EFFECTIVE DA |
| | | | | | |
| PLAN NOTES | | | | | |

**SPECIAL INDICATORS**
FACULTY PHYSICIAN PATIE

PREADM
ADMIT B
DISCHA

UH-57
REV. 10/91

MEDICAL RECORD COPY



**UNIVERSITY OF CINCINNATI HOSPITAL**

**CONSULTATION FORM**

*CNSFRM*



08/23/953 UHF
JUPITER, CARMEN
2453 GRANDVIEW AVENU
CINCINNATI OH 45206

CONSULTATION REQUEST TO: __Psychiatry__
(SERVICE)

__J. Cotton VC III / DR. L Arnou__
(PHYSICIAN)

CONSULTATION FROM: __Neurology__
(SERVICE)

__Stac Privitera__
(PHYSICIAN)

UMC-13, Rev. 2/95

REASON FOR CONSULT:

EVALUATE FOR DEPRESSION.

4 of ④

| DATE/TIME CONSULT INITIATED/CALLED | DATE/TIME CONSULTANT ANSWERED |
|---|---|
| 8/6/96 | |

IMPRESSION: 42 y.o. B ♀ CURRENTLY IN HOSPITAL FOR EVALUATION
TO R/O PSYCHOGENIC SEIZURES.

① MAJOR DEPRESSIVE DISORDER
 Pt APPEARS TO BE SOCIALLY ISOLATED, NOT CLOSE TO FAMILY, + HAS
 MANY AREAS OF UNHAPPINESS (JOB, CAREER, CINCINNATI, WEIGHT)
② CANNOT R/O CONVERSION DISORDER Ē SEIZURES
 DIFF: MALINGERING, FACTITIOUS DISORDER, TRUE EPILEPTIC SE
③ CANNOT R/O EATING DISORDER
 HX OF PAST BINGE EATING WITHOUT PURGING.
 SEEMS TO BE FOCUSED ON BODY FAT + IMAGE.
④ CANNOT R/O AXIS II PERSONALITY DISORDER – more information
needed.

RECOMMENDATIONS:

① OUTPATIENT REFERRAL FOR RE-EVALUATION + APPROPRIATE TREATMENT

② START ZOLOFT 50 mg PO qAM

Pt evaluated. As noted above pt has major depression and multiple
psychosocial stressors. Psychogenic seizures are not likely conversion
symptoms. Discussed at length the need for outpt treatment
including antidepressant medication and psychotherapy. Pt was
referred to U. Psych Service 475-8710. Pt agreeable to above
recommendations. Reviewed side eff
of Zoloft.

J. Cotton UCN    971-2001

_____ MD

RESIDENT PHYSICIAN CONSULTANT                    ATTENDING PHYSICIAN CONSULT

WHITE—MEDICAL RECORD          YELLOW—CONSULTANT