UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

CARMEN CARTER                           Case No. C-1-00-977

     Plaintiff                         (Judge Weber)

vs

THE E.W. SCRIPPS COMPANY

     Defendant

## PLAINTIFF'S MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION TO VACATE COURT ORDER

I.    PROCEDURAL BACKGROUND

Plaintiff was terminated from employment as a reporter for The

Cincinnati Post in October 1999. Her termination was the culmination of a

two year paper campaign which human resources experts call "managing

out". This technique includes setting impossible goals, giving problem

workers clients no one else wants, taking them off a project they love or

giving them a bad performance review. On the surface, managing out can

look like normal disciplinary action. In both, employees are told they need

to improve or face consequences. But while a straightforward correction

plan, which often involves extra training or even mentoring, is designed to

1

help the employee keep his job – surreptitious managing out ensures s/he won't. Making a paper trail is meant to build an airtight case for dismissal – even if the cause is bogus.

In practice this involved taking away Plaintiff's beat (religion), giving her minimal assignments such as making calls on stories written by other reporters, and writing short items that carried no by-line. Most importantly this included making up rules, which applied to no other reporter but Plaintiff, without any parameters or guidelines, so that at any given moment the Plaintiff was in violation of the new "rule". And each "violation" generated a new memo in Plaintiff's personnel file. This included disciplinary suspensions for events fabricated by management.

The discharge was upheld in a tainted arbitration award by Northern Kentucky University Chase College of Law Professor Edward P. Goggin. However, the decision was tainted by Goggin's failure to disclose he had been quoted in several articles published by the Defendant. He also failed to disclose he had been arbitrator in another hearing in which he ruled in favor of the Defendant. In the Plaintiff's award, Goggin used direct quotes from witness testimony to purportedly quote the Plaintiff, without indicating it was not the Plaintiff's testimony. Goggin exceeded

his authority by including extra allegations (the Defendant produced from an illegal set of documents) in the three grievances before him. His conclusion the Defendant had no obligation to make any accommodations for the Plaintiff under the Americans With Disabilities Act is in manifest disregard of the law.

Coupled with the failure to disclose, Goggin's unilateral amendment of grievances, his furtive attribution of Defense testimony to the Plaintiff, and the manifest disregard of ADA law, the award was "procured by corruption, fraud, or undue means" and should be vacated.

The Plaintiff filed a discrimination charge with the Equal Employment Opportunity Commission. However there were so many manufactured documents by the Defendant, that the EEOC was unable to find probable cause. The EEOC issued a right to sue letter.

RULE 60(b)(3)

Under rule 60(b)(3), to establish that misconduct foreclosed full and fair presentation of movant's case, the rule asserts the misconduct must substantially have interfered with movant's ability to fully and fairly prepare for and proceed to judgment.

This burden is met if the conduct was intentional, in which case proof, may be even circumstantial proof of the fact is required. It will be presumed that intentional misconduct substantially interfered with the movant's ability to prepare for trial and try the cases. *Moore's Federal Practice.*

The Defendant admits and attempts to justify why discovery was not completed. However, the Defendant is obligated to turn over discovery when ordered by the Court.  Incomplete discovery resulted in the Plaintiff being prejudiced and unable to respond to summary judgment and the Magistrate's Report and Recommendations. Further, the Defendant is in violation of orders to turn over discovery (doc. 51).


Plaintiff's lack of counsel severely impacted the prosecution of this case. Plagued by disabling illness (Major Depressive Disorder) and grief (the death of Plaintiff's father), the Plaintiff was unable to properly prosecute this case. The Defendant admits as much by claiming Plaintiff's own "failures to prosecute this action do not constitute fraud or bad faith by the defendant". The Defendant is nevertheless at a minimum guilty of misconduct since they violated a Court order directing them to

turn over discovery upon the Plaintiff's signature on the Stipulated Protective Order (exhibit 1).

## II.    LAW AND ARGUMENT

Where as here there is an appeal pending, the District Court can entertain a 60(b) motion. The appellant can make a motion for remand of the case that the District Court may proceed with the motion. _First National Bank of Salem, Ohio v Hirsch_, 535 F.2d 343; 1976 U.S. App. LEXIS 11431.

As a request for remand is already before the Sixth Circuit, so the District Court is free to consider this motion. The purpose of a 60(b) is to address unfairly procured judgments and that can only be done in District Court.

## MEDICAL INABILITY

The Defendant mistakenly contends that the Plaintiff's inability to file objections to the Magistrate's Report is reason not to entertain this motion for relief, yet failed to cite any case law.

The E.W. Scripps Company takes great pains to pontificate on what the Plaintiff should have done, without any acknowledgement of her condition. The Plaintiff was medically incapable of responding to the

Motion for Summary Judgment and the Magistrate's Report and Recommendations. In a medical inability defense, the first prong is whether there was an inability to respond. The second prong of the three-part defense is that the inability was not self induced because it was beyond Plaintiff's control. Finally, the Plaintiff made in good faith all efforts to respond by going to the library but was unable to concentrate.

In the year 2003, her medication was changed twice, without symptom relief – it was changed upon her arrival at the Central Community Health Board of Hamilton County and again in September. It has subsequently been changed twice this year alone with little symptom relief. A recent increase in Abilify to 15 mg enabled the Plaintiff's coherence enough to ask for an extension of time. A letter from Central Community Health Board outlining my treatment is attached as exhibit 2.

Ultimately, in the course of a disease such as Major Depressive Disorder, the ability to function is directly impacted by symptom relief through medication. Adding other stressors, such as the loss of a parent, to a person already suffering a disabling illness, and whatever ability to function simply ceases. This being the case, the coherence required to ask the Court for an extension to respond to the Magistrate's Report,

6

simply does not exist. The Plaintiff was unable to concentrate well enough to even put together such a request.

The Plaintiff was not "distracted" by illness and indigence. Illness and indigence are life altering events. Major life activities of sleeping, eating, concentrating and caring for oneself are impaired by Major Depressive Disorder. The Plaintiff is not distracted, but disabled according to the Social Security Administration.

The Plaintiff isn't asking for time to respond to the Magistrate's Report, she is begging the Court's compassion for relief from a judgment obtained in violation of a Court order to release discovery upon receiving the signed Stipulated Protective Order.

Two cases cited by the Defendant are not pertinent in this case: Merriweather v Wilkinson and Rideout v Scott. Merriweather was attempting to use a 60(b) in place of an appeal and failed to present a reasonable argument. Rideout is moot because it was the appeal of a 60(b) without substantive argument. This is a case in which the Plaintiff has filed an appeal and a 60(b) with the legitimate issue of fraud by the Defendant.

The Defendant indicates the Plaintiff signed the stipulated protective order AFTER the discovery deadline, but fails to note she signed it in conjunction with the order they violated. That order (exhibit 1) explicitly tells the Defendant to provide discovery upon receiving the stipulated protective order. There is no language in the order about "reviewing" discovery documents. In fact, the Defendant boasts of producing over 600 pages of documents in this case (Doc. 47), yet when in violation of a Court order, suddenly the Plaintiff can only "review" discovery materials. The Defendant should have turned over the discovery sought.

If the Defendant felt that giving discovery after the deadline was inappropriate, they failed to file any objections to the order.

"Discovery orders are supposed to be followed, and a disobedient party who fails to follow such orders does so at their own peril."

*Fears v Wilhemina Model Agency Inc.,* 2004 U.S. Dist. LEXIS 8364. If such discovery were not probative and requisite to prove Plaintiff's case, the Defendant would not have required a stipulated protective order. Hence, the contention the Defendant didn't know the Plaintiff needed this discovery, is but so much pettifoggery.

"Where relevant information...is in the possession or control of one party and not provided, then an adverse inference may be drawn that such information would be harmful to the party who fails to

8

provide it."

_Weeks v ARA Services,_ 869 F. Supp. 194; 1994 U.S. Dist. LEXIS 17118.

The Sixth Circuit defines "other misconduct" under 60(b)(3) as reaching questionable behavior affecting the fairness of litigation other than statements or the failure to make statements. _In re Evans v Commercial Bank and Trust Co.,_ 2003 WL 22871619 (Bankr. W.D. Tenn.). Relief on the ground of "other misconduct" can be justified "whether there was evil, innocent or careless [sic] purpose". _Jordan v Paccar, Inc.,_ 97 F.3d 1452, 1996 WL 528950 (6th Cir. (Ohio)).

C O N C L U S I O N

Having insisted the deadline for discovery had expired, the Defendant had already filed their Motion for Summary Judgment and a dismissal – it is disingenuous of the Defendant to imply had the Plaintiff merely asked the discovery materials in question would've been produced. The Defendant has an obligation to turn over discovery materials.

It was not the intent of the Court to punish the Plaintiff by not responding to her motion to compel until after the discovery deadline, thereby nullifying the Defendant's obligation to produce legitimately discoverable evidence. Not to vacate the judgment in view of the Court's

9

intent could only serve to breed disrespect for the courts and the legal profession, since the judgment violates the very concept of justice. The Federal Rules of Civil Procedure say a court should vacate a ruling if there are "...extraordinary circumstances that create a substantial danger that the underlying judgment was unjust". *Margolies v Johns,* 798 F.2d 1069, 1073 (7th Cir. 1986). To let stand a judgment in which one party has withheld discovery crucial to the adversary's defense is disproportionately prejudicial.

The Defendant makes much ado about the Plaintiff failing to respond to summary judgment, knowing full well she had no means of responding without the discovery in question.

While the Defendant's Motion for Summary Judgment is not a pleading pursuant to Rule 8, as pleadings are defined, it's a document filed with the Court requesting certain relief which should be stricken for failure to comply with discovery.

Accordingly, because the Defendant is in violation of Court Order, because this misconduct prevented the Plaintiff from asserting any defense in the prosecution of this case and because this comportment is prejudicial, the Plaintiff beseeches the Court to vacate this judgment

and strike the Defendant's Motion for Summary Judgment. While this case is before the Sixth Circuit, a remand has been requested and the Plaintiff prays this Court exercises jurisdiction over this motion and grants it accordingly.

Respectfully submitted,

*Carmen Carter*

Carmen Carter
419 Probasco Street #7
Cincinnati, OH 45220
(513) 751-5076

## CERTIFICIATE OF SERVICE

I hereby certify that a copy of the foregoing has been served upon David Holcombe, Baker & Hostetler, 312 Walnut Street, Cincinnati, OH 45202, attorney for the Defendant, via regular U.S. mail this 1st day of November 2004.

*Carmen Carter*

Carmen Carter

11