UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

FILED
KENNETH J. MURPHY
CLERK

03 JUN 17 PM 2:04

U.S. DISTRICT COURT
SOUTHERN DIST OHIO
WEST DIV CINCINNATI

CARMEN CARTER,
    Plaintiff

vs

THE E.W. SCRIPPS COMPANY,
    Defendant

Case No. C-1-00-977
(Weber, J.)
(Hogan, M.J.)



**ORDER**

This matter is before the Court on Plaintiff's Emergency Extension Request (Doc. 39), Defendant's Memorandum in Opposition to Plaintiff's Emergency Extension Request (Doc. 40), and Plaintiff's Response to Defendant's Opposition to Plaintiff's Emergency Extension Request (Doc. 42). Also before the Court are Plaintiff's Motion Requesting Court Intervention in Discovery (Doc. 45), Defendant's Memorandum in Opposition to Plaintiff's Motion Requesting Court Intervention in Discovery (Doc. 47); and Defendant's Motion to Compel (Doc. 46).

Plaintiff requests a one-month extension of time in which to identify her expert witnesses and provide corresponding expert reports. Pursuant to the Court's Scheduling Order, Plaintiff was required to identify and provide the reports of her expert witnesses by December 31, 2002. (*See* Doc. 34). As the basis for her request, Plaintiff states that her current employment ended on December 27, 2002 rather than December 31, 2002, as expected. Presumably, Plaintiff is arguing that

51

she has insufficient funds with which to retain an expert witness in this matter. Defendant opposes Plaintiff's request for two reasons: 1) Plaintiff has repeatedly delayed the litigation of this matter through various extension requests; and 2) Plaintiff previously identified her treating psychiatrist, Dr. Franks, as an expert but because Dr. Franks was "not retained or specifically employed to provide expert testimony" in this matter, no report was required under Rule 26. (*See* Doc. 40, Ex. A, Letter from Plaintiff's Counsel dated March 29, 2002, attached). Plaintiff, in her reply memorandum argues that her previous counsel, who is no longer representing her, did not discuss said disclosures, or lack thereof, with her prior to serving the disclosures upon Defendant. Plaintiff further contends that her counsel indicated that she "may at a later date identify an expert to explicate and quantify her damages..." (Id.).

Thereafter, on June 24, 2002, the Court issued a Scheduling Order extending the deadline for Plaintiff to identify her experts and provide expert reports until December 31, 2002. (Doc. 34)[1] Plaintiff, having lost her job four days prior to the deadline, indicates that her financial situation necessitates a one-month extension of the expert witness deadline. To this end, Plaintiff filed the Expert Witness Reports of Dr. Darrell Franks and Don Frankenfeld (Doc. 41) on January 31, 2003. We find that a one-month extension is not an unreasonable request and hereby grant Plaintiff's Request (Doc. 39). However, the "reports" are not in compliance with Rule 26(a)(2).

Rule 26(a)(2)(B) provides that the expert report

> shall contain a complete statement of all opinions to be expressed and the basis and reasons therefore; the data or other information considered by the witness in forming the opinion; and the exhibits to be used as a summary of support

---

[1] The original deadline for the disclosure of Plaintiff's expert witnesses was February 14, 2002. Upon the request of counsel, the deadline was extended to March 29, 2002 (Doc. 23) and then to December 31, 2002 (Doc. 34).

2

> for the opinions; qualifications of the witness, including a list of all publications authored by the witness within the preceding ten years; the compensation to be paid for the study and testimony; and a listing of any other cases in which the witness has testified as an expert at trial or by deposition within the preceding four years.

Fed. R. Civ. P. 26(a)(2)(B).

It does not appear from Dr. Franks' "report" that he was retained or specifically employed to provide expert testimony in this matter. Dr. Franks' letter merely states Plaintiff's treatment history and his diagnosis as her treating physician. Thus, it would appear that identification of Dr. Franks as an expert witness may, in fact, be improper. If it is Plaintiff's intention to utilize Dr. Franks as an expert witness, the report does not comply with the above mentioned Rule. The report contains no information with respect to publications authored by Dr. Franks, a listing of other cases in which Dr. Franks has testified, nor information regarding the compensation to be paid in exchange for Dr. Franks' study and testimony. With respect to the forensic economist, Donald Frankenfeld, Plaintiff has provided, in addition to his resume, three charts entitled: 1) "Projected Elements of Loss;" 2) "Lump Sum Exhaustion Pattern;" and 3) Sensitivity Analysis Based on Table 1. She has provided two tables entitled: 1) Lump sum value for various worklife and mitigation earnings assumptions and 2) Carmen Carter Loss Analysis Model. These charts and tables are accompanied by no statement of the opinions which are to be expressed by Mr. Frankenfeld nor the reasons or basis for his opinions. There is also no information with respect to publications authored by Mr. Frankenfeld, the compensation to be paid to him for his study and his testimony or a list of cases in which he has testified as an expert. While we have held that Plaintiff's request for a one-month extension is not per se unreasonable, these deficiencies must be addressed immediately. As such, Plaintiff's disclosure must be supplemented to cure these deficiencies within thirty days.

Moreover, to the extent that Plaintiff is currently "seeking

additional experts," she is well beyond the deadline for the identification of such experts. Federal Rule of Civil Procedure 26(a)(2)(C) provides for the supplementation of *initial* disclosures, however, this is not to meant to permit Plaintiff to make *additional* identifications of previously undisclosed expert witnesses throughout the litigation of this matter without leave of the Court to do so.

Also before the Court is Plaintiff's Motion Requesting Court Intervention in Discovery (Doc. 45) and Defendant's Memorandum in Opposition thereto. (Doc. 47). Plaintiff is asking the Court to "stop the clock on discovery," intervene by compelling the Defendant to "properly respond" to Plaintiff's First Set of Interrogatories and Request for Production of Documents, and order Defendant to provide Plaintiff with a "Stipulated Protective Order which doesn't violate Plaintiff's rights to legitimately discoverable information/data/files," and to extend the discovery deadline at least three months. (*See* Doc. 45).

Plaintiff takes issue with the proposed Protective Order which was submitted to her by Defendant following the withdrawal of Plaintiff's counsel. Plaintiff claims that Defendant is attempting to "extort" her into signing the proposed order which she claims would impermissibly limit her access to discoverable documents. Plaintiff's argument is fundamentally flawed as the proposed Protective Order does not limit address what documents will or will not be produced, but rather, addresses the procedures to be followed with respect to those documents which are deemed confidential. The purpose of the Protective Order is clearly to protect the confidentiality of personal information contained in the documents to be produced. Plaintiff was asked to propose any revisions which she felt were necessary, but has declined to do so. Likewise, Plaintiff has set forth no proposed revisions to the Protective Order in her motion. As such, we find Plaintiff's argument on this point to be without merit. We find the Proposed Protective Order submitted by Defendant to be extremely similar, if not identical, to those used in other employment discrimination suits before this Court. Moreover, we do not find that the proposed Order in any way limits discovery in this matter.

Therefore, unless Plaintiff can articulate, with specificity, what provisions of the proposed Order are unacceptable to her and how it can be revised, Plaintiff shall sign the proposed Protective Order. Until there is a Protective Order in place, Defendant will not be required to release to Plaintiff any documents containing confidential information as it is defined in Defendant's Proposed Protective Order. (*See* Doc. 45, Ex. 1, Stipulated Protective Order).

Plaintiff next takes issue with Defendant's responses to her First Set of Interrogatories and Request for the Production of Documents. In Interrogatory No. 1, Plaintiff requests that Defendant "identify by name, address, date of birth, position or title, gender and race, and dates of employ and final or current salary all full time employees of The Cincinnati and Kentucky Post since January 1, 1990." In Plaintiff's Request for Production No. 16, she requests that Defendant produce the personnel files of all employees identified in response to Interrogatory No. 1. Defendant, not surprisingly, responded that such a request was overbroad, unduly burdensome, irrelevant and not reasonably calculated to lead to the discovery of admissible evidence. Instead, Defendant produced a list of employees who, like Plaintiff, were employed as Metro Section reporters by The Post from 1994 through the date of Plaintiff's termination on October 6, 1999, and offered to produce their personnel files upon the execution of a Protective Order.

Defendant argues that, because the present action is not an age discrimination case, and because Plaintiff has not alleged discriminatory pay practices, Defendant is not required to provide the dates of birth and salary information for these employees. We agree. Plaintiff has articulated no valid reason for requiring Defendant to provide such information and we find that Plaintiff has no need for such information. With respect to the time period of Plaintiff's request, we find that a five year period of discovery of employee records is more than reasonable. Plaintiff began her employment with Defendant in September 1987. Plaintiff's alleged performance problems began in 1996, culminating in a suspension in November of 1998, another

5

suspension in March of 1999 and finally her termination on October 6, 1999. Plaintiff is alleging disparate treatment with respect to her suspension and subsequent termination. Plaintiff's first disciplinary action was in 1998 when she was suspended. As such, we find that limiting the discovery of employee information to two years prior to the start of Plaintiff's alleged performance problems, and four years prior to her first suspension, is reasonable.

Plaintiff argues that Defendant is attempting to decide comparability in violation of *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344 (6th Cir. 1998). Plaintiff contends that the employees to whom she seeks to compare herself need not be identically situated and therefore, she is entitled to discovery of all employees of the Cincinnati and Kentucky Post. As Defendant correctly points out, Plaintiff's reading of *Ercegovich* is too restrictive. The Sixth Circuit has made it abundantly clear that "similarly situated" means:

> The individuals with whom the plaintiff seeks to compare his/her treatment must have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it.

*Ercegovich*, 154 F.3d at 352, (quoting *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 583 (6th Cir. 1992). In cases such as Plaintiff's, where disparate disciplinary treatment is alleged, the Sixth Circuit has approved the limitation of discovery to those employees who work in the same department under the same supervisor as plaintiff. *See Hampshire v. Henderson*, No. 00-1047, 2001 WL 857199 at *2-3 (6th Cir, June 21, 2001)(holding that it was proper to limit discovery to employees who committed similar misconduct as plaintiff during a four year period and who also reported to plaintiff's supervisors). Plaintiff was a reporter in the Post's Metro Department and reported to Assistant City Editor Al Salvato who supervised the reporters in the Metro Department. Plaintiff alleges that Mr. Salvato treated her less favorably than other

6

reporters in the Metro Department and discriminatorily applied rules and procedures to her. We find that the only relevant comparisons are to those employees under Mr. Salvato's supervision in the Metro Department. For this reason, as well as those stated above, Plaintiff's Motion to Compel is denied with respect to Plaintiff's First Interrogatory No. 1 and Request for Production No. 16.

Plaintiff next argues that Defendant's responses to Interrogatories 9 and 10 are without merit. In her Interrogatory No. 9, Plaintiff requests the factual basis for Defendant's defense that Plaintiff was not disabled. Defendant's response to Interrogatory No. 9 states Defendant's position that Plaintiff was not a qualified individual with a disability because she engaged in misconduct which resulted in her discipline and eventual termination. Plaintiff wants Defendant to clarify how it is that she is not a qualified individual with a disability. (Doc. 45, Exs. 6, 7). In order to be a qualified individual with a disability, Plaintiff must have been performing her job in a manner which met Defendant's reasonable expectations. *McDonald v. Union Camp. Corp.*, 898 F.2d 1155, 1160 (6th Cir. 1990); *Chappell v. GTE Prod. Corp.*, 803 F.2d 261, 266 (6th Cir. 1986) *cert. denied*, 480 U.S. 919 (1987). It is Defendant's position that Plaintiff did not meet these expectations due to her misconduct and that she was suspended and terminated as a result. We agree with Defendant that Plaintiff is taking issue with Defendant's legal conclusion and as such, her argument is not the proper subject of a Motion to Compel. Defendant has set forth the alleged misconduct for which Defendant claims it disciplined and ultimately terminated Plaintiff. We find that this constitutes the factual basis for its defense that she was not a qualified individual with a disability. As such, Defendant's response to Interrogatory No. 9 was proper and Plaintiff's Motion to Compel with respect to this issue is denied.

Interrogatory No. 10, Plaintiff argues that Defendant's claims of res judicata and estoppel are not appropriate as there has been no prior proceeding which would give rise to defendant's claim of res judicata or estoppel. It is Defendant's position that Plaintiff fully litigated her

7

claims regarding her suspensions and termination through arbitration, at which the Arbitrator found just cause for Plaintiff's suspensions and termination. Thus, Defendant argues that those claims are now barred by the doctrines of res judicata and estoppel. Plaintiff contends that no claims of gender, race and disability discrimination were addressed during the arbitration hearing and therefore the doctrines of res judicata and estoppel are an improper basis for Defendant's stated position. As stated in reference to Interrogatory No. 9, Plaintiff's dispute appears to be with Defendant's legal analysis and is not appropriate for a Motion to Compel. We find that Defendant has adequately and fully responded to Interrogatory No. 10. Accordingly, Plaintiff's Motion to Compel with respect to Interrogatory No. 10 is denied.

Plaintiff next seeks a minimum three month stay of discovery in this case due to the filing of a Motion to Vacate the Arbitrator's Award in Case No. C-1-00-739, a case which is pending before Judge Spiegel. Plaintiff argues that the two cases should be considered together, an argument which has already been considered, and rejected, by the District Court. (*See* Doc. 47, Ex. D, Report and Recommendation Denying Plaintiff's Motion to Consolidate; Ex. E, Order Affirming Magistrate Judge's Recommended Decision). This Court held, in response to Plaintiff's Motion to Consolidate filed in Case No. C-1-00-739, that these cases do not present "even a minimum of common questions of law or fact to justify consolidation." (*See* Doc. 47, Ex. D, Report and Recommendation Denying Plaintiff's Motion to Consolidate). Plaintiff also represents that she is in the process of retaining counsel and that a stay of discovery in this matter, to allow her other case to proceed, would allow counsel to "better discern becoming attorneys of record in this case." While Plaintiff is certainly free to continue her search for counsel to assist her in this case, we do not feel that a stay of discovery, while counsel make up his or her mind as to whether to represent Plaintiff, is appropriate. As such, Plaintiff's Motion for a Stay of Discovery is denied.

Lastly, we address Defendant's Defendant's Motion to Compel

(Doc. 46). Plaintiff has filed no response to this motion. Pursuant to S.D. Ohio Civ. R. 7.2 (a)(2), "[f]ailure to file a memorandum in opposition may be cause for the Court to grant any Motion as filed, other than one which would result directly in entry of final judgment or an award of attorney fees." Defendant claims that Plaintiff has completely failed to respond to its First Request for Production of Documents, its Second Set of Interrogatories and its Second Request for the Production of Documents. Plaintiff was served with Defendant's First Request for Production of Documents on November 21, 2001. (Doc. 46, Ex. A ). A conference was held with the Court on April 8, 2002, at which time Plaintiff was advised of her responsibility to respond to Defendant's discovery requests. Defendant has submitted verification of its extrajudicial attempts to resolve this matter. (*See* Doc. 46, Exs. B, C, Letters from defense counsel dated February 24, 2003 and March 14, 2003, attached). Similarly, on February 18, 2003, Defendant served Plaintiff with its Second Set of Interrogatories and Request for Production of Documents. Defendant asserts that Plaintiff has failed to respond to these requests. Plaintiff has likewise, failed to respond to Defendant's motion and has, thus, offered no explanation for her conduct. The discovery deadline expired on March 31, 2003. Moreover, Plaintiff's responses to Defendant's first discovery requests are more than one year past due. As such, we find Defendant's motion to be well taken. Plaintiff shall, therefore, provide responses to Defendant's First and Second Requests for Production of Documents, as well as Defendant's Second Set of Interrogatories, within fifteen (15) days from the date of this order. Failure to comply with the terms of this order may result in a recommendation to the District Court that this action be dismissed.

### IT IS THEREFORE ORDERED THAT:

1) Plaintiff's Emergency Extension Request (Doc. 39) is **GRANTED** consistent with the opinion herein.

2) Plaintiff's Motion Requesting Court Intervention in Discovery (Doc. 45) is **DENIED** consistent with this decision.

3)  Defendant's Motion to Compel (Doc. 46) is GRANTED.

4)  Plaintiff shall provide responses to Defendant's First and Second Requests for Production of Documents, as well as Defendant's Second Set of Interrogatories, within fifteen (15) days from the date of this order. **Failure to comply with the terms of this order may result in a recommendation to the District Court that this action be dismissed.**

SO ORDERED.

Date: June 17, 2003
les/TSH
6/13/03

Timothy S. Hogan
United States Magistrate Judge

# CENTRAL COMMUNITY HEALTH BOARD OF HAMILTON COUNTY, INC.

*supported by*
*Hamilton County Community Mental Health Board*
*and Hamilton County Alcohol & Drug Addiction Services Board*
520-532 Maxwell Avenue
Cincinnati, Ohio 45219

Bennett J. Cooper, Jr.
Executive Director

September 28, 2004

RE:   Carmen Carter
      DOB:  08/23/1953
      SSN:  ▓▓▓▓▓▓▓

To Whom It May Concern:

The above referenced patient was admitted for treatment on 03/13/2003. She sees Barbara Duhart, LISW biweekly for individual therapy and Al Rivera, MD every 8 weeks for med/somatic monitoring.

Ms. Carter has an admitting diagnosis of Depressive Disorder, NOS, DSM IV 311. She has had only minimal positive response to treatment, effecting several medication changes since admit. Ms. Carter was given Effexor XR, Neurotin and Serzone at the beginning of treatment with little to no symptom relief. This medication was changed on 09/16/03 with the discontinuing of Serzone and addition of Zyprexa, 5 mg at bedtime. On 12/23/03 the Zyprexa was lowered to 2.5 mg at night but was increased back to 5 mg on 02/03/04. Due to lack of positive response, the Zyprexa was increased again to 10 mg on 03/09/04. Zyprexa was discontinued on 04/20/04 and Geodon was started at 40 mg. HS. On 05/25/04, Geodon was increased to 80 mg HS along with continuation of Effexor XR, 300 mg q d and Neurontin 300 mg BID. Geodon was increased to 20 mg qd and 80 mg HS on 07/25/04. Ms. Carter reported no positive responses and by her request, on 08/24/04, the Geodon was prescribed on a decreasing dosing schedule to discontinue and a trial of Abilify 10 mg was instigated. Evaluation of this latest medication change is due at next appointment.

This info is given to the patient at her request on September 28, 2004. Additional information available with receipt of properly endorsed releases.

| | |
|---|---|
| A.D.A.P.T. ..........872-8870 | HIV Early Prevention & Intervention Project ..........961-9930 |
| Central Intake ..........559-2097 | Medical Records ..........559-2024 |
| Client Account Inquiries ..........559-2090 | Outpatient Department ..........559-2097 |
| Community Services ..........559-2075 | Personnel & Training ..........559-2911 |
| Crisis Stabilization Program ..........559-2922 | Research & Evaluation ..........559-2029 |
| Day Treatment Center ..........559-2063 | Residential Services ..........531-0800 |
| Drug Services ..........559-2056 | Children's Services Referrals ..........559-2078 |
| Drug Services Intake ..........559-2048 | All Other Departments ..........559-2000 |

Fax Number 559-2020
An Equal Opportunity Employer and Equal Service Provider

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

CARMEN CARTER                           Case No. C-1-00-977

   Plaintiff                            (Judge Weber)

vs

THE E. W. SCRIPPS COMPANY

   Defendant

## AFFIDAVIT

STATE OF OHIO

COUNTY OF HAMILTON

   I, Carmen Carter, having been duly cautioned and sworn, do hereby state based upon personal knowledge and belief as follows:

   The one-page document from Central Community Health Board is an accurate and true description of my medical regimen at Central Community Health Board.

FURTHER, AFFIANT SAYETH NOT,

_Carmen Carter_
Carmen Carter

MAHER W. KADDOURA
Notary Public, State of Ohio
My Commission Expires
July 30, 2008

Sworn to and subscribed before me this 1st day of November, 2004.

_____
Notary Public